Good morning, Your Honors. Elizabeth Falk on behalf of Defendant Brosnan. Ms. Falk, would you adjust the microphone up just a little bit? Thank you. I'd like to reserve two minutes of argument for rebuttal. Mr. Brosnan's convictions must be reversed by this Court because they were obtained as a result of government argument that Rule 404b flatly prohibits. Quite simply, in this case, the jewel of the prosecution's evidence was an improper propensity argument, that because Mr. Brosnan had filed a fake document in another separate lawsuit, he must have done it again in the charged case. That's propensity. That's not allowed. The argument is the main error in this case. So you think that's independent of the admission of the information? It is an independent prejudice argument, yes. The admission was error, but the real error in this case was the argument that the prosecutor made in repeatedly drawing parallels to the previous separate act and explaining that because Mr. Brosnan had acted that way before, he must have acted that way in this case. How do you then square that with the very clear jury instruction that says that evidence of other crimes, wrongs, or acts is not admissible, and then it talks about having heard about the civil action, and it can only be considered for limited purposes? So we have a not atypical situation where we have a jury instruction which we're to presume that the jury followed, and then we have the argument. So the problem with the limiting instruction in this case is that there actually was not admitted for knowledge, plan, preparation, and it was so slightly probative of intent that that jury instruction was flawed. But now you're going back to attack the admissibility in the first place more than the closing argument. So the instruction is very clear that it's not to be considered generally. So I don't think that really, once the evidence is in, whether it should have gotten in on a shoestring or whether it came in full force doesn't seem to be at issue in your appeal. Well, but we moved for a mistrial as a result of the argument. I understand. The district court did not cure that argument, did not grant a mistrial and did not issue a curative instruction that specifically went to the propensity argument. And once the government's argument came in as to the, it was clear propensity, it overpowered and completely overpowered the instruction that was given by the district court that it couldn't be considered because that's the way, the reason it was argued. That was the way that it was argued. It was argued purely as propensity. So the instruction didn't meet the nature of the problem. The instruction in this case said that the jury could not consider it for the purposes of knowledge, plan or preparation or intent. Well, knowledge was never an issue and the government never argued that somehow the al-Qaeda evidence was a step in a plan that then related to the charged conduct. So the instruction went to the basis that the jury wasn't supposed to consider the evidence, but those weren't at issue in the trial. The only arguably probative aspect to this evidence and why it really shouldn't have been admitted at all was arguably probative of intent because the circuit has held that when a defendant puts specific intent at issue, intent is always relevant. Well, certainly. Once specific intent was at issue, then it showed absence of mistake, which is part of the theory. But that's not, it was not a part of the limiting instruction. And the district court specifically denied the government's motion to admit it on that basis. And the government does not cross-appeal that finding. In this case, the seminal issue was who wrote the letter. Was it Oberle or Brosnan? The fraudulent nature of the, the intent was implicit in the letter itself. And because the issue was who wrote it, this evidence was particularly dangerous because it was argued to say that he must have written it because he wrote something else. Yeah, it was dangerous because highly probative. Well, as this Court has held, 404B evidence is often going to be highly probative. Yes. But under Woolsey, that's why it's subject to a special relevancy test. Yeah. Prejudice and probative overlap to a significant degree. They absolutely do. Yeah. And that's why this evidence was so prejudicial it shouldn't have been admitted. But that prejudice was compounded by the argument, an argument that went uncured by the district court. So let me interrupt for a second. There was no objection during the argument itself. What's our standard of review? Do you think it's plain error or do you think it is not? Your Honor, we've argued harmless error because under the United States v. Lyman, the Ninth Circuit has sanctioned counsel's strategic decision to not interrupt argument of its opponent. And that actually in the Lyman case, the argument was deemed to be, excuse me, the objection and the request for mistrial after the argument was deemed to preserve the issue. So under that case, harmless error would apply. It is the government's burden to prove this Court that the erroneous propensity argument was harmless. Because of this Court's precedent, it was not. In the Brown case and the Brooke case, this Court has considered this exact point, which is whether an erroneous propensity argument requires reversal. And this Court needs to look to a couple of factors. First, everyone understands that propensity and, excuse me, 404B evidence is generally disfavored. But you have to look at where it fell in the context of the case. Was it a sideshow or was it really a crux of the government's proof? In this case, the argument itself shows that this was the jewel of the government's case. This was very powerful evidence that there was this example that Mr. Brosnan had done it before, and therefore he must have done it again. And so we submit that the volume, both of trial testimony and of the government's argument, weighs in favor of finding that the error was not harmless. In addition, the Court considers what the district court's curative effort was. The only effort was made was an instruction that was given before the argument. And that's very important in answer to Judge McKeown's question. It was before the arguments were given that the Court heard that instruction, which is just the standard 404B instruction that they're not allowed to consider it for propensity. Then the argument came in. There was no subsequent instruction that the jury should totally disregard the government's effort to say. But that then goes to sort of a plain error standard. If you need to have a curative instruction, the only place you could have it would be during or at the close of the argument, correct? That's right. And we moved from mistrial, and the district court denied that. After denying it multiple times throughout the pretrial proceedings and the trial itself, defense counsel consistently raised this objection that the only real reason the government was seeking to use Alcott Mortgage Revenue. But did the – assuming that you don't want to interrupt the argument for a variety of strategic reasons, did the defense ever ask the court, well, if you're not going to grant a mistrial, then they should at least have a curative instruction in light of the closing argument? Defense counsel did not, in part because the district court said the points made for the record and the district court emphasized, I heard the argument. I believe it was a proper use of 404B. Well, I suppose. I think the question for standard review, and maybe this is slicing it too thinly, is there's one standard review for a mistrial. There's a separate one for an objection that's properly made during closing argument or a request for a curative instruction. It's hard to fault the district court for not giving a curative instruction which was not requested. So aren't we just stuck with the question of whether there should have been a mistrial or not? Isn't that the only issue that's actually preserved? Well, I think they're part and parcel, and the First Circuit case in Carpenter goes to this idea that because there was also a continuing objection throughout the trial as to this 404B evidence, that that in and of itself preserved the point for closing argument. It preserves it for appeal, but it doesn't really preserve it for telling the jury how to decide the case, does it? Well, and I had thought that Judge Thomas's question went to what the standard of review should be for this court on appeal. And so that was why I answered in that vein, is that it should be harmless error not just because of Lyman on the mistrial point, but also because of the First Circuit in Carpenter, and there simply is no case that's opposite in the Ninth Circuit that is not harmful error. And so I think that's a good point. I think the Court's position is that the Fifth Circuit says that when you're making you make a continuing objection throughout the course of the trial. I grant you your continuing objection as to the admission of the evidence, but as you've indicated, the question of the argument is different. But whether it's granted on the basis of because there should have been a mistrial, I mean, that's a perfectly valid reason to reverse this case. I mean, if that is what the Court's going to limit and decide if that, if a mistrial was required as a result of the argument, the end result, the end game is the same. Well, except that you're criticizing the district court for not giving a curative instruction, which is not requested. It was, in other words, you didn't argue in the alternative, look, give a curative instruction or grant a mistrial. So it's hard to say that it's plain error for the district court not to, I mean, it has to be a plain error analysis as to whether the district court should have given a curative instruction. But the question of the standard review has to do with whether the case should go back is my point. And whether it goes back because a mistrial should have been granted or it goes back because the point of the mistrial is that that was the only remedy at that point. I don't think so.  But it would have been an exercise in futility, is our argument at that point. The district court said, I find that that was a perfectly proper use of 404B. Since he said it was perfectly proper, the request for curative instruction would have been. You still need to make your record, even if you think it's going to be futile, there's nothing wrong with making an objection or offering a curative instruction to the district court. I guess the point is, what I'm struggling with is the standard for reversing a district court on a mistrial may be different from a standard of if you've made a proper objection during closing argument and it had been granted or died or asked for a curative instruction. So I haven't found a case that suggests that the standard is any different, so I can't address that point. Okay. But the part and parcel is, it was argued for propensity. That was the real reason it was admitted. It was an improper reason. And because the volume of evidence was so significant, the conviction should be reversed and the case should be overturned. And maybe the prosecutor's argument helps understand the real reason it was admitted. That's exactly our point. Or maybe I shouldn't say the real reason it was admitted, the real reason it was proffered. That's exactly our point. And Bracey is instructive on that issue, the Ninth Circuit case in Bracey. In that case, they did hold to a plain error standard, so they didn't reverse. But the very essence of admissibility, the court looked at what the argument was to then go back and say, this really wasn't admissible. So even though it's a two-part inquiry, they really are very tied together. Just briefly, I'd like to address the question of experts, because in this case, the very element of interstate commerce, which is the only reason that the case was even in federal court, was proven by an expert that was delivered in the middle of trial, unnoticed, at the last minute. That was the basis for the government's argument that interstate commerce, that the jury should find interstate commerce. That was an abuse of discretion on the part of the district court. The defense had no time and no opportunity to cross-examine that witness. It completely floundered the face of Rule 16. And as a policy matter, this Court should not sanction the district court's decision. Well, it initially said it wasn't going to let in that kind of evidence because it was unnoticed expert testimony. For some reason, reverse course. And if the name of the real question I had is whether it is in the nature of expert testimony. I know there was this flip-flop, but would you remind us what aspects you think rise to expert as opposed to fact testimony? Yes. The essence of interstate commerce in this case was the way that electrons flow from a server in San Francisco. And, in fact, do they have to pass through various ports or what pathway those electrons go to actually cross the state line. That's not something that's common knowledge. It's not within the expertise of an ordinary person. And the government's argument that because this was his job, that that somehow excused a Rule 16 requirement, that simply doesn't hold water because lots of experts are simply doing their job. Chemists who test drugs are doing their job. ATF agents who testify about interstate commerce are doing their job. You still have to notice that under Rule 16, the government didn't. Admission of that evidence was an abuse of discretion. With that, I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. Ms. Gray. May it please the Court. Good morning. My name is Lori Gray. I represent the United States. Defendant raises several issues on appeal, none that merit reversing conviction. I'm going to jump right into the 404b evidence, and I'll start with that it was properly admitted, which then leads to my argument that it was also properly argued. The Court in this case properly admitted the evidence because the rule states that while such evidence cannot be admitted to proof of character, it can come in for certain specific proper purposes. And here it was. It came in for knowledge, intent, preparation, and plan. This case, Your Honors, wasn't just about a letter. The defendant tries to minimize that it was about this phony letter. It was about a broad scheme to defraud that encompassed defendant's perjury at the evidentiary hearing. It encompassed aggravated identity theft and obstruction of justice. Oh, gosh. I thought it just, I mean, assuming that he generated the letter, which I gather the jury found, the letter was designed to get him out front from under a default. That was the kickoff of the fraud, Your Honor. And then from there. But the default was going to be fraternity's fees. Was there anything else at stake? And the fraternity's fees was chicken feed. But he filed a false document with the Court. I understand that. But assuming he filed the false document, which I'm willing to assume because the jury so found, the purpose of it, as I understand, was to get out from under a default. The default was going to stick him with attorney's fees for a fairly small amount. That may be true, but this was a fraud on the court. No, I understand that. But you're saying all of a sudden you're talking sort of broad and so on. My understanding is he was trying to get out from under a judgment for attorney's fees that was coming down on him. That's right. That was the first step, Your Honor. And as the district court, if I could. So what's the second step? What else was he trying to do? Oh, if I jump ahead to sentencing, as the district court said, at every opportunity the defendant could have backed down, he could have extracted, but he doubled down. The second step is the Court wants to get to the bottom of this. Judge Alsup sends out a notice and says, whoa, when he asked the attorney, did you file? Did you file this extension that was filed, this continuance? And that's when Brisk submits a declaration going through all the reasons. The answer is no. Of course. And here's all the reasons false. So, Your Honor, why it becomes more significant is the Court says, I'm going to have an evidentiary hearing. I'm going to get to the bottom of this. And at the evidentiary hearing, he says, please bring the letter, bring the original so I can see this and we can talk about this. And the defendant gets there and says, well, I didn't bring it. Part of my practice is I scan it in and then I destroy it, I recycle it. And the Court at this point, being suspicious, again gives the defendant an out. So it becomes more than just collecting. He says, do you want to consult with an attorney? No, I know all that. Okay. And at that point, he goes under oath and commits perjury. And those are charges in this case. You know, what bothers me about this case, beyond the narrow question that we've got directed to us on appeal, what we have here is a fairly small amount of money at stake. He forges this letter to get out from under he, I think, as a technical matter, probably did commit wire fraud. Ordinarily, that would be handled by some sort of contempt, some sort of sanction. I mean, he's in jail for three years for doing this? I don't get it. Because, as the Court said, he kept doubling down, Your Honor. Perhaps if that had been the first step, but then he was given the opportunity, do you want to consult with an attorney or we're going to have this hearing go under oath? Yes, go under oath. And at that point he goes under oath. Yes. So he makes the district judge really mad. So the district judge refers it to the U.S. attorney. The U.S. attorney prosecutes in front of the very same district judge. And so he's now in jail for three years for something that I would think ordinarily would be sanctioned, but not for three years in prison. Your Honor, all I can do is point to the fact that, as the district court judge said, when he had opportunities to extract himself and he could have said, you know what, I did a stupid thing. Yeah, yeah. This is the Hatfields and McCoys and I did the stupid thing. But if the defendant's the Hatfield, the McCoy on the other side didn't go ahead and file a false document and testify under oath perjurious. So the Court found in this case that evidence that this had happened in a prior case was permitted to come in because it was remarkably similar to knowledge, intent, preparation, and plan. And this Court's case law shows that those similarities are important to provide the link. Okay. So let's get to the closing argument. Yeah, let's get to the closing argument, because there, you know, the government appropriately recites, in effect, an excerpt from the jury instruction that I'm giving you this evidence because of, to show his intent, preparation, plan, and most important, his knowledge. Correct. But then they jump to statements, the one about, well, he's either the luckiest guy in the world or, and then it goes something to the effect of, he's a liar and a creator of false documents. So when I hear that, I think, man, he did it once, he did it twice. Sure. When I heard that, too, Your Honor, but that needs to be put in context. And there are a number of ellipses in the defendant's brief at page 40 just before that. And if I can, if I can put that in context by talking about how the prosecutor first argued this, as you've noted, Your Honor, the prosecutor said this is in for a limited purpose. You can't consider, you can't convict the defendant for what went on in Elkey, but for a limited purpose. And the reason it's relevant, and the prosecutor tells the jury, is that at the evidentiary hearing, the defendant says to the Court, boy, if I had known what I know now, I would have been here on the first. But I believe the letter was true and genuine. And as the prosecutor pointed out to the jury, that he was on notice. He was on notice from Elkey that if he didn't author the letter, that case management conferences, sometimes false letters get filed, or he was on notice because of the similarities in that case. So the government very meticulously, Your Honor, goes through and gives the background of the case leading up to this, gives the similarities, and then at the point where the ellipses are in the brief, the omitted portion, and this is at excerpts of record 422 and 423, after meticulously going through the similarities to show the link from the knowledge gained in the previous case to show defendants' claimed ignorance of the brisk letter in this case, and again, the forensic similarities, which show the defendant mimicked the content of the letters that he had on his computers, errors and all, which tied into the plan, preparation, intent to fraud. After going through all that, what's omitted is the government brings it back to this case. The government says, in this case before you. You're reading on which page now, 423? Excerpt of record 422 and 423. Thank you. So after going through the similarities which form the linchpin and which are proper and are what gets you to the proper purpose of 404B, the government brings it back to this case and says, in the case before you, the phony brisk letter doesn't come into existence until May 19th, minutes before Brosnan files it with this Court to try to fight off dismissal of the case against Oberle. Then the question, then the statement, Your Honor, that you refer to. So either Mr. Brosnan is the unluckiest guy in the entire Federal courthouse or he is a liar and creator of false documents, and that's the only conclusion to be drawn from this case. Documents. Documents. Right. And the only document at issue in this case is the letter. Not true, Your Honor. They first filed the letter, and then when the Court sent out to Mr. Brisk, then another letter, and that's one of the wire frauds. Mr. Brisk files it, sends it, excuse me, the defendant sends a letter and says, Oberle did it. There's more than one document charged in those wire frauds, and that's why that statement, Judge McKeown, is tied right to the record. The indictment charges, an excerpt of Record 1416, that defendant's scheme was knowingly intentionally fabricated documents and committed perjury to persuade the district court to reinstate the lawsuit. There were documents. So the prosecutor calling defendant a liar is not because of what he did in Elkey or because of his character. It's because what he did in this case when he committed perjury, obstruction of justice, and aggravated identity theft. That comment is tethered to the specific charges here in the indictment. I'd also like to make clear for the record that this 404B evidence was not the jewel of the prosecution's case. There was a mountain of evidence that convicted defendant separate and apart, and the district court commented on it. But it gets a lot tougher without the prior. It gets a lot tougher without the prior evidence from the prior case. I mean, you had a missing link of evidence. I would argue it was icing on the cake, but the cake was pretty darn good to start with, because as the district court said, there were certain immutable facts that collapsed the entire defense when he said, I got the brisk letter well in advance of the case management conference, and the forensics showed that to be a bold-faced lie, that, in fact, he got the letter, the letter was created on his computer on May 19th, the exact same day that he files his motion to reinstate the lawsuit, and the letter that he files is dated in April well before. The second key fact that the district court found was that he had an explanation for that that's consistent with what the computers do. It was on Photoshop, and if he had put it in as a document on a Photoshop rather than created it there, he would have put it in on that day. That is to say, that's not slam-dunk evidence against him. It hurts him. But it does not conclusively prove that the letter was created on that day. Well, and then to continue with that, he said to the court, when the court said, where's the letter, do you have it, and he said, well, I would have scanned it in at or near the time. We don't have evidence that he did that. And he said, or perhaps I got it from my mail service, mail link. That turned out to be a bold-faced lie. He had an open mail service at that time. And more importantly, he never got email from mail service. And then we have the forensics, which shows that he ginned up that letter on that day, that at 647 in the morning, there is a fragment, a Microsoft fragment, and that little after 715, we then have the creation, that's the first appearance of the document, the phony letter in his computer. And his pattern and practice that he testified to under oath was that when I get something, I put it in immediately, I scan it immediately. And the judge drilled down with that. Again, he gave him a chance. He said, are you sure? I mean, would it have been before the date? Are you sure? Oh, yes. Oh, yes. It would have been before the May 1st date. And the forensics simply showed it wasn't. So the article ---- So how do we get the evidence in as to the forensics? How do we get the evidence in? Yeah, yeah. The defendant's scanner and computers were seized pursuant to a search warrant. Right. And then the experts testified that that was imaged. Government had their expert forensic expert. And all of that is pursuant to qualified experts? That was, Your Honor. Okay. Qualified. That was. Yeah, right. Okay. So we don't have an expert objection to that evidence? No. Okay. And then defense counsel provided an expert, was given an opportunity, provided all that. Okay. But the evidence in this case was really quite overwhelming with regard to, as the Court found, that every step he doubled down. And, again, I do believe that if you look at the indictment, the way it's charged, and if you look at the argument of the prosecutor, that it was tethered to that indictment and was properly argued. If you have any more questions on the 404B, I'm happy to answer them or else I will go on. Perhaps I should address the standard of proof. Well, I mean, it seems to me that we review the denial of the mistrial for abuse of discretion, which is a little more deferential, perhaps, than if an objection had been made during closing argument. That was my only point. Well, one thing I wanted to follow up on that with you, Judge Thomas, is that you asked about did you ask for a curative instruction. They made this objection right when arguments were over, but the jury was deliberating. The jury had not come back. The jury didn't come back for another day. So they make their excerpt of Record 520 is where they make their request. They make their motion for mistrial. They could have, as you said at that point, asked for an instruction and brought the jury back and said just so it's abundantly clear. And the judge did say, well, I didn't think it was a problem. And this was a judge that carefully considered this evidence throughout in a written pretrial order. Right. And then during the government's opening statement was not afraid to jump in. Jumped in and said, hey. Right. But let's assume that the 404B evidence was properly admitted, but that it was error to allow the argument. The question is then how do we apply the standard of review? Well. I mean, assuming. I know you do not think it was, there was anything wrong with the argument, and that's fine. Just hypothetically. If it's error, if in fact it was improper propensity argument, then where does that leave us? Sure. If it was a proper propensity or improper propensity argument and they preserved their objection, then would be was it harmless error? Was it more probable than not that it affected the verdict? And as I've said, the evidence was overwhelming. This was a small part of the case. The government called 14 witnesses, and the witnesses that testified with regard to Elkey were three. They were witnesses six, seven, and eight. They were sandwiched in the middle. They took less than an afternoon. I think the transcript in this case is something like 1,500 pages. And if my math is right, 49 pages were of the Elkey witnesses. So it was a very small part. And that would go to the harmless argument, Your Honor. So you're not arguing plain error? I thought you told me I could. But I can argue plain error, that there was no plain error. No. Well, no, no. I'm just struggling with the standard of review to what to do. I mean, abuse of discretion applies to the motion for mistrial. That's a little more deferential than a legal error made, you know, if the objection had been made during closing argument and the judge made a legal error, that might be different. Then we're looking at a harmless, harmlessness. Well, I think in this case it's clear that the harmless or abuse of discretion standard applies to the admissibility, because they did have a continuing objection as to the admissibility. And that's why we don't make the plain error argument with regard to that. But they did not have a standing objection as to how something was argued. They did not. They had an objection to the admissibility, but not how it was argued.  And I think that's the reason why we're looking at the plain error standard and not the plain error review, because they did not preserve this. Do we get to look at the prosecutor's argument, not for purposes now of hypothesizing an objection to the prosecutor's argument to get around the plain error standard, but do we can we look at the prosecutor's argument as we evaluate the admissibility of the evidence in the first place and the purpose for which it was proffered? I think they're two separate. I think the first – actually, I think the first step is the admissibility and then looking at the argument. I don't think you can flip that and look at the argument before the admissibility. I mean, it's possible it was properly admitted and improperly argued. That could happen. That could happen. I mean, they argue both, but even if they lost on admissibility, they could still be correct. Right. I think the first step is that it was admitted for a proper purpose under 404B. Then once that's in – But when you say admitted for a proper purpose, whose purpose are we talking about? Whose purpose? Yes. I would say the government's. Well, then, why can't I look to what the government does with it later to try and figure out what the government's purpose was when it proffered it? I mean, just to say, if I use it for a certain purpose on day 10 and I introduced it on day 8, it seems to me at least I can make an inference that the purpose for which somebody uses it on day 10 was the purpose for which he admitted it on day 8 so that he could use it later. Well, and it should – I understand your point, Your Honor, but they should dovetail. If it's admitted on day 8 for a specific purpose on day 10, that would be what it was  So I'm trying to figure out not what the purpose that the district judge admitted it for, but rather what was the purpose of the government in proffering it. And I ask you, I say, whose purpose? And you said the government's. Well, improving the elements of the offense here, improving the charge. Well, the purpose as to why you're getting it admitted. And you said, I think, quite correctly, it's the government's purpose. And so I'm trying to figure out, okay, what was the government's purpose? And among other things, I think I can look to what the government did with it once it put it in. Sure. Okay. I agree with that. And the government argued it, as said right from the beginning, for intent, preparation, plan and knowledge. Okay. I got it. I'm out of time, but I would like to move to the expert issue, if I can, since that was brought up by defense counsel. Briefly. You're two minutes over. If you can do it in 15 seconds. The district court didn't abuse its discretion because those were not expert witnesses. They were fact witnesses. Thank you. Good 15 seconds. I figured out what your argument was going to be. No, they were fact witnesses, weren't they? You can testify about where electrons move as a fact as opposed to an opinion, right? Your Honor, we submit not. We submit that was expert testimony. You disagree. He's basically a guy in the computer department or, you know, the electronic records department. And they say that he knew that they've had problems with transmissions before, so he knows how it moves through the system. Why isn't that a fact as opposed to an opinion? Your Honor, he indicated he configured the send mail. He didn't indicate that he had personal knowledge, that this was something that he had learned as a result of his training and experience. Yeah. It doesn't take a highway engineer to tell you where the roads are, right? It doesn't take a highway engineer to tell you that powdered sugar isn't crack cocaine, either. But there are still requirements that experts be noticed on these issues. Fair point. Go ahead. I'd like to pick up where Judge Fletcher left off, which is Bracey. Your point to government counsel is covered by Bracey. There is precedence in this circuit that you can look to the way the government uses 404B evidence to actually go back and find that it was inadmissible, because that was the reason it was admitted all along as evidenced by the argument. That is covered by Bracey. And, in fact, in this case, that is exactly what the defense predicted. That was the basis of the first argument pretrial, two months before the trial started, that this was really the only logical reason the government wanted to use this, and, in fact, it was the only reason that they used it, and the evidence should not have been admissible as evidenced by the argument. And, finally, as far as government counsel's statement that the forensics showed anything in this case to be a bald-faced lie, that is a misstatement of the record. The forensics in this case were inconclusive on both sides. It didn't show who created the letter. We didn't have Oberle's computers to do any forensic evaluation as a result of the government not investigating Mr. Oberle. And the proof against Mr. Brosnan outside of this very strong, and it was the jewel of the case, propensity argument was not sufficient to convict him. It wouldn't have been sufficient to convict him on any of the counts. Thank you, counsel. Thank you. Thank you, both of your arguments, well argued and briefed. The case just will be submitted for decision.
judges: Thomas, McKeown, Fletcher